**BETHLEHEM STEEL CORPORATION,**
**Plaintiff–Appellant,**

v.

**AVONDALE SHIPYARDS,**
**INC., Defendant,**

**United States of America,**
**Defendant–Appellee.**

No. 91–3231
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Jan. 24, 1992.

Robert S. Reich, Robert B. Acomb, III, Terriberry, Carroll & Yancey, New Orleans, La., for plaintiff-appellant.

Peter G. Myer, Atty., U.S. Dept. of Justice, Torts Branch, Civ. Div., Washington, D.C., Harry A. Rosenberg, U.S. Atty., New Orleans, La., Stuart M. Gerson, Atty., U.S. Dept. of Justice, Office of Consumer Litigation, Washington, D.C., for defendant-appellee.

Before JONES, DUHÉ, and WIENER, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Bethlehem Steel Corporation appeals the district court's dismissal of its action against the Army Corps of Engineers entities for monies owed on a contract to perform ship repairs. We have interlocutory jurisdiction because this is an admiralty case. 28 U.S.C. § 1292(a)(3). We agree with the district court's conclusion that Bethlehem was required to comply with the notice provision of the Contract Disputes

Act, 41 U.S.C. § 601 *et seq.*, and its failure to do so required this part of the case to be dismissed.

In April 1988, Bethlehem agreed to perform a major overhaul on the dredge McFARLAND operated by the United States Army Corps of Engineers. Unbeknownst to the Corps, Bethlehem subcontracted tail shaft repairs to Avondale Shipyards, Inc. After completing the overhaul and reinstalling the repaired tail shaft and the dredge, Bethlehem returned the dredge to the Corps in August 1988.

Shortly afterwards, the dredge's port tail shaft failed, and metallurgical inspections suggested that poor welding techniques had caused the failure. The Corps repaired the tail shaft for $300,000 at a different shipyard and withheld this amount of the contract payment owed to Bethlehem. In 1990, Bethlehem filed suit against the United States under the Suits in Admiralty Act, 46 U.S.C.App. § 741 *et seq.* Bethlehem also sued Avondale. The district court granted the United States' Fed.Rule Civ. Proc. 12(b)(1) motion to dismiss based on Bethlehem's failure to submit a certified claim as required by the Contract Disputes Act. *Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1489 (5th Cir.1989). A counter-claim that the United States had filed was also dismissed for lack of subject matter jurisdiction. Bethlehem has appealed.

It is undisputed that contracts for the repair of United States government ships are governed by the provisions of the Suits in Admiralty Act, 46 U.S.C.App. §§ 741–752, and are entrusted, as maritime contract actions, to the admiralty jurisdiction of United States district courts. *United States v. Continental Tuna Corp.*, 425 U.S. 164, 96 S.Ct. 1319, 1328, 47 L.Ed.2d 653 (1975). At the same time, all government contracts are subject to the provisions of the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613. The Contract Disputes Act, fashioned to streamline the settlement of controversies over federal government contracts, generally affords private contractors a two-step review process. Under § 605, they must submit a claim to the contracting officer of the agen-

cy with which the contract was made. If this claim is not resolved satisfactorily through the administrative process, the contractor may then seek judicial review in the Court of Claims or Federal Circuit. Sections 607(g), 609. Section 603 of the Contract Disputes Act makes special provision for maritime contracts as follows:

> Appeals under paragraph (g) of § 607 of this title and suits under § 609 of this title, arising out of maritime contracts, shall be governed by Chapter 20 [Suits in Admiralty Act] or 22 [Public Vessels Act] of Title 46 as applicable, to the extent that those chapters are not inconsistent with this chapter.

The parties agree that § 603 intended at least for subject matter jurisdiction to remain in the federal district courts in cases involving federal government maritime contracts. *Jo–Mar Corp. v. United States*, 15 Cl.Ct. 602 (1988); *Whitey's Welding & Fabrication v. United States*, 5 Cl.Ct. 284 (1984).

The issue for review here is whether Congress intended for the Contract Disputes Act to make an administrative dispute resolution procedure a prerequisite to federal admiralty jurisdiction over government contracts for ship repair under the Suits in Admiralty Act. Bethlehem argues that *Whitey's Welding* and *Jo–Mar* support its contention that the federal admiralty jurisdiction wholly excludes application of the Contract Disputes Act § 605 administrative procedure to such contracts. We disagree. In each of those cases, the only issue was whether jurisdiction lay in the Court of Claims, under § 609(a)(1) of the Contract Disputes Act, or in the federal district court pursuant to § 603. Those cases did not consider whether filing an administrative claim is a prerequisite to a contract dispute action in either court. In fact, the *Jo–Mar* opinion inferentially suggests that such a notice is necessary even for maritime contract actions arising out of ship repairs. The first issue treated by *Jo–Mar* was an election of remedies question predicated on whether the contractor had timely perfected its appeal from a contracting officer to the Armed Services Board of Contract Appeals, and the effect of its un-

timely attempt to appeal on a later-filed court suit. If it had been unnecessary to file an administrative claim for the reimbursement allegedly caused by government-induced delays in the ship repairs, there would have been no election of remedies question in *Jo–Mar.*

More persuasive than the silent testimony of *Jo–Mar*, however, is the specific language of § 603. Section 603 permits *appeals* to be governed by the Suits in Admiralty Act or the Private Vessels Act "to the extent that those chapters are not inconsistent with this chapter." In the context of the Contract Disputes Act, "appeals" are requests for relief from adverse administrative contract determinations. Had Congress intended to exempt government maritime contracts entirely from the Contract Disputes Act, it could have done so more forthrightly than simply by allowing "appeals" to be maintained in the federal district courts. Thus, we agree with the conclusion reached by Judge Sear in the Eastern District of Louisiana:

> ... This section [603], rather than completely excluding maritime contracts from the Contract Disputes Act, simply vests appeals from the administrative determination of claims in the district courts, rather than in the Court of Claims or the Court of Appeals for the Federal Circuit.

*River & Offshore Services Company v. United States*, 651 F.Supp. 276, 281 (Ed. La.1987).[1] Bethlehem did not file a proper administrative claim against the government seeking recovery for the ship repairs it performed. *See* 41 U.S.C. § 605(c). The district court therefore had no jurisdiction over Bethlehem's admiralty action. *Trevino, supra.*

---

1. We further agree with Judge Sear's observation that our reading of § 603 is buttressed by the language of § 602(b) which specifically excludes "from the chapter" certain contracts entered into by the Tennessee Valley Authority. When Congress meant to exclude a whole class of contracts from the Contract Disputes Act, it knew how to do so.

2. Bethlehem complains that piecemeal litigation will result from an affirmance of the district court's dismissal of the United States and its counterclaim, because Bethlehem's suit against

For these reasons, we affirm the district court's dismissal of Bethlehem's prematurely filed contract claim against the United States for lack of subject matter jurisdiction.[2] AFFIRMED.

Avondale continues. The problem is one of Bethlehem's creation, however, for it could have filed suit and abated the proceedings pending resolution of its administrative claim against the United States, or it could have deferred filing suit until that administrative proceeding was exhausted.